**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JORDAN ROSENBLATT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No._____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS OF** |
| SQUARE, INC., RANDY GARUTTI, MARY | ) | **THE FEDERAL SECURITIES LAWS** |
| MEEKER, LAWRENCE SUMMERS, | ) | |
| DARREN WALKER, JACK DORSEY, DAVID | ) | |
| VINIAR, PAUL DEIGHTON, ANNA | ) | **JURY TRIAL DEMANDED** |
| PATTERSON, ROELOF BOTHA, JAMES | ) | |
| MCKELVEY, AMY BROOKS, and SHAWN | ) | |
| CARTER, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Jordan Rosenblatt ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal information and belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Square, Inc. ("Square" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Square will acquire Afterpay Limited ("Afterpay") through Square's subsidiary Lanai (AU) 2 Pty Ltd. ("Merger Sub") (the "Proposed Transaction").[1]

---

[1] Non-party Afterpay is an Australian public company limited by shares and registered in Victoria, Australia under Australian law.  Afterpay's principal place of business is in Melbourne, Australia. Non-party Merger Sub is an Australian proprietary company limited by shares and an indirect wholly owned subsidiary of Square.

2.      On August 1, 2021, Square and Afterpay jointly announced their entry into a Scheme Implementation Deed dated August 2, 2021 (the "Merger Agreement") to sell Afterpay to Square. That agreement provides each share of Afterpay common stock will be converted into the right to receive either: (a) 0.375 shares of Square Class A common stock ("New Square Shares"), or (b) 0.375 CHESS Depositary Interests ("New Square CDIs") representing ownership interest in shares of Square Class A common stock issued by Square pursuant to a Deed Poll to be executed by Square and Merger Sub in favor of all Afterpay shareholders ("Deed Poll") (the "Merger Consideration").[2]

3.      On October 5 2021, Square filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section

---

[2] The approximate value of the Proposed Transaction is $29 billion.

27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

### THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of the Company.

10.      Defendant Square is a Delaware with its principal executive offices located at 1455 Market Street, Suite 600, San Francisco, CA 94103.  The Company builds tools to empower businesses and individuals to participate in the economy.  Square's common stock trades on the New York Stock Exchange under the ticker symbol "SQ."

11.      Defendant Randy Garutti ("Garutti") is and has been a director of the Company since July 2017.

12.      Defendant Mary Meeker ("Meeker") is and has been a director of the Company since June 2011.

13.      Defendant Lawrence Summers ("Summers") is and has been a director of the Company since June 2011.

14.      Defendant Darren Walker ("Walker") is and has been a director of the Company since June 2020.

15.      Defendant Jack Dorsey ("Dorsey") is co-founder of the Company and Chairman of the Board, and has been President, Chief Executive Officer ("CEO"), and a director since July 2009.

16.     Defendant David Viniar ("Viniar") is Lead Independent Director and is and has been a director of the Company since October 2013.

17.     Defendant Paul Deighton ("Deighton") is and has been a director of the Company since May 2016.

18.     Defendant Anna Patterson ("Patterson") is and has been a director of the Company since November 2017.

19.     Defendant Roelof Botha ("Botha") is and has been a director of the Company since January 2011.

20.     Defendant James McKelvey ("McKelvey") is co-founder of the Company and is and has been a director since July 2009.

21.     Defendant Amy Brooks ("Brooks") is and has been a director of the Company since October 2019.

22.     Defendant Shawn Carter ("Carter") is and has been a director of the Company since May 4, 2021.

23.     Defendants identified in paragraphs 10-22 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

24.     On August 1, 2021, Square and Afterpay announced in relevant part:

Square, Inc. (NYSE: SQ) and Afterpay Limited (ASX: APT) today announced that they have entered into a Scheme Implementation Deed under which Square has agreed to acquire all of the issued shares in Afterpay by way of a recommended court-approved Scheme of Arrangement.  The transaction has an implied value of approximately US$29 billion (A$39 billion) based on the closing price of Square common stock on July 30, 2021, and is expected to be paid in all stock.  The acquisition aims to enable the companies to better deliver compelling financial products and services that expand access to more consumers and drive incremental revenue for merchants of all sizes.  The closing of the transaction is expected in the first quarter of

4

calendar year 2022, subject to the satisfaction of certain closing conditions outlined below.

"Square and Afterpay have a shared purpose. We built our business to make the financial system more fair, accessible, and inclusive, and Afterpay has built a trusted brand aligned with those principles," said Jack Dorsey, Co-Founder and CEO of Square. "Together, we can better connect our Cash App and Seller ecosystems to deliver even more compelling products and services for merchants and consumers, putting the power back in their hands."

Afterpay, the pioneering global 'buy now, pay later' (BNPL) platform, will accelerate Square's strategic priorities for its Seller and Cash App ecosystems. Square plans to integrate Afterpay into its existing Seller and Cash App business units, enable even the smallest of merchants to offer BNPL at checkout, give Afterpay consumers the ability to manage their installment payments directly in Cash App, and give Cash App customers the ability to discover merchants and BNPL offers directly within the app.

"Buy now, pay later has been a powerful growth tool for sellers globally," said Alyssa Henry, Lead of Square's Seller business. "We are thrilled to not only add this product to our Seller ecosystem, but to do it with a trusted and innovative team."

"The addition of Afterpay to Cash App will strengthen our growing networks of consumers around the world, while supporting consumers with flexible, responsible payment options," said Brian Grassadonia, Lead of Square's Cash App business. "Afterpay will help deepen and reinforce the connections between our Cash App and Seller ecosystems, and accelerate our ability to offer a rich suite of commerce capabilities to Cash App customers."

Afterpay is an industry leader with a best-in-class product and strong cultural alignment with Square. As of June 30, 2021, Afterpay serves more than 16 million consumers and nearly 100,000 merchants globally, including major retailers across key verticals such as fashion, homewares, beauty, sporting goods and more. Afterpay empowers consumers to access the things they want and need, while allowing them to maintain financial wellness and control. Afterpay also assists merchants in growing their businesses by helping to drive repeat purchases, increase average transaction sizes, and provide their buyers with the ability to pay over time. Afterpay is deeply committed to helping people spend responsibly without incurring service fees for those who pay on time, interest, or revolving debt, and supports consumers in a number of countries across APAC, North America and Europe (including under its Clearpay brand).

"By combining with Square, we will further accelerate our growth in the U.S. and globally, offer access to a new category of in-person merchants, and provide a broader platform of new and valuable capabilities and services to our merchants and consumers. We are fully aligned with Square's purpose and, together, we hope to continue redefining financial wellness and responsible spending for our customers," said Anthony Eisen and Nick Molnar, Afterpay Co-Founders and Co-CEOs. "The

transaction marks an important recognition of the Australian technology sector as homegrown innovation continues to be shared more broadly throughout the world. It also provides our shareholders with the opportunity to be a part of future growth of an innovative company aligned with our vision."

For Square, BNPL presents an attractive opportunity supported by shifting consumer preferences away from traditional credit, especially among younger consumers, consistent demand from merchants for new ways to grow their sales, and the global growth in omnichannel commerce. Combined, Square and Afterpay's complementary businesses present an opportunity to drive growth across multiple strategic levers, including:

- **Enhance both the Seller and Cash App ecosystems**. Afterpay's global merchant base will accelerate Square's growth with larger sellers and expansion into new geographies, while helping to drive further acquisition of new Square sellers. Afterpay will expand Cash App's growing product offering, enable customers to manage their repayments, and help customers discover new merchants when the Afterpay App is integrated into Cash App.
- **Bring added value, differentiation, and scale to Afterpay**. Afterpay will benefit from Square's large and growing customer base of more than 70 million annual transacting active Cash App customers and millions of sellers, which will expand Afterpay's reach and growth both online and in-person. Afterpay consumers will receive the benefits of Cash App's financial tools, including money transfer, stock and Bitcoin purchases, Cash Boost, and more.
- **Drive long-term growth with meaningful revenue synergy opportunities**. Square believes Afterpay will be accretive to gross profit growth with a modest decrease in Adjusted EBITDA margins expected in the first year after completion of the transaction. Square sees an opportunity to invest behind Afterpay's strong unit economics as well as attractive growth synergies, including the opportunity to introduce offerings and drive incremental growth for sellers and increased engagement for Cash App customers.

Afterpay's Co-Founders and Co-CEOs will join Square upon completion of the transaction and help lead Afterpay's respective merchant and consumer businesses, as part of Square's Seller and Cash App ecosystems. Square will appoint one Afterpay director as a member of the Square Board following closing.

\*\*\*

**Transaction Terms**

Under the terms of the Scheme Implementation Deed, which has been approved by the members of the Boards of Directors of both Square and Afterpay, Afterpay shareholders will receive a fixed exchange ratio of 0.375 shares of Square Class A common stock for each Afterpay ordinary share they hold on the record date. Square may elect to pay 1% of total consideration in cash.

Square has agreed to establish a secondary listing on the Australian Securities Exchange (ASX) to allow Afterpay shareholders to trade Square shares via CHESS Depositary Interests (CDIs) on the ASX.  Afterpay shareholders will be able to elect whether to receive the scheme consideration in NYSE listed Square Class A common stock or CDIs.  The CDIs listed on the ASX are expected to be eligible for S&P index inclusion in Australia.

Based on Square's closing price of US$247.26 on July 30, 2021, this represents an implied transaction price of approximately A$126.21 per Afterpay share, a premium of approximately 30.6% to Afterpay's latest closing price of A$96.66.  This represents an approximate 21.9% premium over the 10-day volume weighted average Afterpay share price, and an approximate 10.5% premium over the 30-day volume weighted average Afterpay share price, each as of July 30, 2021.  Following completion of the transaction, Afterpay shareholders are expected to own approximately 18.5% of the combined company on a fully diluted basis.

The transaction is subject to conditions precedent as is customary for transactions of this nature, including, among other things, receipt of required regulatory approvals and the approval of shareholders of both companies.

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor to Square and Wachtell, Lipton, Rosen & Katz and King & Wood Mallesons are serving as its legal advisors. Goldman Sachs and Qatalyst Partners are serving as financial advisors to Afterpay, Highbury Partnership is serving as financial advisor to Afterpay's Board and Gilbert + Tobin and Cravath, Swaine & Moore LLP are serving as Afterpay's legal advisors.

**The Proxy Statement Contains Material Misstatements or Omissions**

25.      The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Square's stockholders.  The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting decision on the Proposed Transaction.

26.      Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan

Stanley").

***Material Omissions Concerning the Financial Analyses Relied on by the Board***

27.     The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by the Morgan Stanley.

28.     The Proxy Statement describes Morgan Stanley's fairness opinion and its various underlying valuation analyses.  That description, however, omits key inputs and assumptions forming the bases of these analyses.  The absence of this material information precludes the Company's public stockholders from fully understanding Morgan Stanley's work.  As a result, Company stockholders cannot assess what significance to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

29.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to identify each of the comparable companies observed in the analysis and disclose the individual multiples and financial metrics for each of the comparable companies.

30.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the levered free cash flows for both Square and Afterpay used in connection with the analyses; (b) specific range of terminal values calculated for each of the projection cases utilized in connection with the analysis; (c) the inputs and assumptions underlying the range of discount rates Afterpay and Square used in connection with the analysis; and (d) the net debt and non-controlling interest used in connection with the analysis.

31.     With respect to Morgan Stanley's *Precedent Transactions Premia* analysis, the Proxy Statement fails to identify each of the transactions observed in the analysis and disclose the premiums for each of the transactions observed.

32.    With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to identify each of the price targets observed and the source of the analyst price targets.

33.    The omission of this information renders the statements in the "Opinion of Square's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

34.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.   Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other SQUARE stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

35.    Plaintiff repeats all previous allegations as if set forth in full.

36.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

37.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.   The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the

financial valuation analyses that support the fairness opinion provided by Morgan Stanley. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

39.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

40.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

41.     Plaintiff repeats all previous allegations as if set forth in full.

42.     The Individual Defendants acted as controlling persons of Square within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Square, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Company stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Square, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in

concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Square stockholders;

        B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

        C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

        D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

        E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  October 19, 2021               **LONG LAW, LLC**

                       By  */s/ Brian D. Long*
                           Brian D. Long (#4347)
                           3828 Kennett Pike, Suite 208
                           Wilmington, DE 19807
                           Telephone: (302) 729-9100
                           Email: BDLong@longlawde.com

                           *Attorneys for Plaintiff*